# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM DIVISION

PLANNED PARENTHOOD SOUTH ATLANTIC;
BEVERLY GRAY, M.D., on behalf of
themselves and their patients seeking
abortions,

                Plaintiffs,

v.

JOSHUA H. STEIN, Attorney General of
North Carolina, in his official
capacity; TODD M. WILLIAMS, District
Attorney ("DA") for Prosecutorial
District ("PD") 40, in his official
capacity; JIM O'NEILL, DA for PD 31, in
his official capacity; SPENCER B.
MERRIWEATHER III, DA for PD 26, in his
official capacity; AVERY CRUMP, DA for
PD 24, in her official capacity; JEFF
NIEMAN, DA for PD 18, in his official
capacity; SATANA DEBERRY, DA for PD 16,
in her official capacity; WILLIAM WEST,
DA for PD 14, in his official capacity;
LORRIN FREEMAN, DA for PD 10, in her
official capacity; BENJAMIN R. DAVID, DA
for PD 6, in his official capacity; KODY
H. KINSLEY, M.P.P., Secretary of the
North Carolina Department of Health and
Human Services, in his official
capacity; MICHAUX R. KILPATRICK, M.D.,
PhD., President of the North Carolina
Medical Board, in her official capacity,
on behalf of herself, the board and its
Members; RACQUEL INGRAM, PhD., R.N.,
Chair of the North Carolina Board of
Nursing, in her official capacity, on
behalf of herself, the Board and its
members; and their employees, agents,
and successors,

                Defendants.

**Case No: 1:23-CV-480**

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY PHILIP E. BERGER, PRESIDENT *PRO TEMPORE* OF THE NORTH CAROLINA SENATE and TIMOTHY K. MOORE, SPEAKER OF THE NORTH CAROLINA HOUSE OF REPRESENTATIVES**

**INTRODUCTION AND STATEMENT OF THE NATURE OF THE MATTER**

Proposed Intervenors, Philip E. Berger, in his official capacity as President *Pro Tempore* of the North Carolina Senate, and Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives (the "Legislative Leaders") seek to intervene as defendants on behalf of the General Assembly to defend the duly enacted laws of the State of North Carolina. The Legislative Leaders have an interest in upholding the validity of state statutes aimed at protecting unborn life, promoting maternal health and safety, and regulating the medical profession. North Carolina law designates the Legislative Leaders as agents of the State for the purpose of intervening to defend these statutes. Routine application of recent Supreme Court precedent makes this a straightforward issue to resolve.

North Carolina law expressly permits intervention by the President *Pro Tempore* of the Senate and the Speaker of the House of Representatives on behalf of the General Assembly as a matter of right in any action challenging a North Carolina statute. N.C. Gen. Stat. §§ 1-72.2, 120-32.6. The Supreme

1

Court recently held that this law plainly authorizes intervention by these Legislative Leaders in a case like this.

The Supreme Court recognized the Legislative Leaders' significant protectable interest in protecting valid North Carolina laws and potential impairment if they are blocked from participating in a lawsuit about the validity of North Carolina laws under Rule 24(a). *See Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191 (2022) (granting intervention to the same proposed intervenors in this matter to defend the constitutionality of another North Carolina statute because proposed intervenors are the State's statutorily authorized agents). Thus, they are entitled to intervene as a matter of statutory right and as a matter of right under Federal Rule of Civil Procedure 24(a), or, in the alternative, to intervene permissively under Rule 24(b).

This case proves the necessity and wisdom of North Carolina's choice about who can speak on the State's behalf in federal court. Attorney General Joshua Stein, while named as a defendant, has publicly opposed North Carolina's laws regulating abortion at issue. He informed the Legislative Leaders that he will not defend the challenged laws in this

case and will *affirmatively support* Plaintiffs' challenge. At 4:14 p.m. on June 22, 2023, the following statement was publicly submitted on Josh Stein's official twitter handle: "After a thorough review of the case in Planned Parenthood v. Stein, I have concluded that many of the provisions in North Carolina's anti-abortion law are unconstitutional. My office will not defend those parts of the law."[1] That makes the Legislative Leaders' intervention even more important. Thus, the Court should grant their Motion to Intervene.

## STATEMENT OF THE FACTS

On June 16, 2023, Plaintiffs filed a Complaint seeking a declaration, under the United States Constitution and 42 U.S.C. § 1983, that North Carolina Session Law 2023-14 (The "Act") is unconstitutional. Plaintiffs contend The Act, when taken together, is unconstitutional due to vagueness, impossibility of compliance, a lack of due process and equal protection, and that it violates the First Amendment. *See* D.E. #1, Compl. ¶¶ 80, 82, 85, 87.

---

[1]  twitter.com/JoshStein_/status/1671974995797352474 (last visited June 22, 2023 at 8 pm EST).

The normal 21 days that the various named Defendants have to respond to the Complaint once served has not yet run, and could not run until July 7, 2023, at the earliest. Five days after filing their Complaint, on June 21, 2023, Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction. Today, June 22, 2023, the Court announced that it would hold a hearing to consider arguments on Plaintiffs' Motion for a Temporary Restraining Order on June 28, 2023.

## STATEMENT OF THE QUESTION PRESENTED

Should the Court grant the Legislative Leaders' Motion to Intervene under Rule 24 either as of right or as permissive in an expedited fashion to allow them to appear and present arguments at the June 28, 2023, hearing?

## ARGUMENT

The Court should grant Legislative Leaders' Motion to Intervene and allow them to intervene as defendants in this matter and appear and present arguments at the June 28, 2023, hearing to defend North Carolina's statutory scheme because they are entitled to do so as of right under Rule 24(a) or,

4

in the alternative, because the Court finds that they satisfy the requirements of permissive intervention under Rule 24(b).

## I. The Legislative Leaders are entitled to intervene as of right.

Federal Rule of Civil Procedure 24(a) requires a court to permit anyone to intervene who, (1) "[o]n timely motion," (2) "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," (3) "unless existing parties adequately represent that interest." *Berger*, 142 S. Ct. at 2200-01 (quoting Fed. R. Civ. P. 24(a)); *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991). "Liberal intervention is desirable" to ensure that cases include "as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986)(citations omitted).

### A. Timely Motion.

Courts look to three factors to determine whether a motion to intervene is timely: (1) "how far the underlying suit has progressed"; (2) any "prejudice" that granting the

5

motion would cause to the other parties; and (3) any justification for any delay in filing the motion by a proposed intervenor. *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014). Plaintiffs filed the Complaint June 16, 2023, less than a week ago. No named defendants have responded with an answer or substantive motion. *See Carcano v. McCrory*, 315 F.R.D. 176, 178 (M.D.N.C. 2016).

Most importantly, the Legislative Leaders learned today, on June 22, 2023, that Plaintiffs seek a Temporary Restraining Order, which has been set for a hearing on June 28, 2023, and the Attorney General will not defend the challenged law.[2] *See Fisher-Borne v. Smith*, 14 F. Supp. 3d 699, 702 (M.D.N.C. 2014)(this Court allowed the Legislative Leaders to intervene as timely even though case had been pending over two years in large part due to a very recent change in posture of that case based on the Supreme Court's actions.) The Legislative Leaders have expeditiously sought intervention, and no prejudice will result from allowing their intervention during

---

[2] June 22, 2023, Letter from North Carolina Department of Justice Attorney General's Office to the Legislative Leaders' General Counsels, attached as Exhibit 1.

6

the pleading stage of litigation, especially because no defendant has filed any answer or substantive motions yet.

## B. Significant Protectable Interests.

The Legislative Leaders have a significant, protectable interest in the enforcement of a duly enacted state statute, enacted according to the express command of the People of North Carolina. *Berger*, 142 S. Ct. at 2201-06 (citations omitted).[3] In fact, the State of North Carolina has expressly authorized intervention in such cases:

> the Speaker of the House of Representatives and the President Pro Tempore of the Senate, as agents of the State, by and through counsel of their choice, including private counsel, shall jointly have standing to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute . . . .

N.C. Gen. Stat. § 1-72.2.

The U.S. Supreme Court recently applied this statutory provision to permit intervention by the same Legislative

---

[3] States possess 'a legitimate interest in the continued enforce[ment] of [their] own statutes' . . . . [F]ederal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law"... "[t]hrough the General Assembly, the people of North Carolina have authorized the leaders of their legislature to defend duly enacted state statutes against constitutional challenge.

7

Leaders to defend the constitutionality of another North Carolina statute. *Berger*, 142 S. Ct. at 2200-01. State law affirmatively authorized the Legislative Leaders as the state's agents to protect legal challenges against the state's laws. This gives them a significant protectable interest that may be impaired whenever a state statute is challenged. *See Id.*

In *Berger*, the Supreme Court recognized that "the State has made plain that it considers the leaders of the General Assembly 'necessary parties' to suits like this one [challenging a state statute]." *Id.* at 2203 (citing § 120-32.6(b)). The Court held "where a State chooses to divide its sovereign authority among different officials and authorize their participation in a suit challenging state law, a full consideration of the State's practical interests may require the involvement of different voices with different perspectives." *Id.* at 2203. That applies here, too. Thus, *Berger* definitively resolves the question of the Legislative Leaders' significantly protectable interest and its potential impairment, in favor of intervention.

8

In addition to the statutory right establishing the Legislative Leaders' significant protectable interests and their potential impairment, the State has legitimate and specific interests in promoting maternal health, regulating the medical profession, and protecting unborn life. The Supreme Court recognized as much in *Dobbs*: "A law regulating abortion, like other health and welfare laws, is entitled to a strong presumption of validity. It must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2284 (2022). The Court further explained that

> these legitimate interests include respect for and preservation of prenatal life at all stages of development, the protection of maternal health and safety; the elimination of particularly gruesome or barbaric medical procedures; the preservation of the integrity of the medical profession; the mitigation of fetal pain; and the prevention of discrimination on the basis of race, sex, or disability.

*Id.*

Advancing these interests, the Act requires basic safety measures for any abortion. The Legislative Leaders' legitimate interest in and authority to enact health-and-welfare laws —an area where state legislatures should receive

9

great deference— is at stake here. *Dobbs*, 142 S. Ct. at 2284 (citations omitted).[4]

### C. Interests Not Adequately Represented.

A presumption of adequate representation "is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Berger*, 142 S. Ct. at 2204. The Legislative Leaders satisfy the inadequate representation requirement on a mere showing that representation of its interests "'may be' inadequate" and the burden of showing that is minimal. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); accord *In re Sierra Club*, 945 F.2d

---

[4]    Under the Constitution, courts cannot 'substitute their social and economic beliefs for the judgment of legislative bodies.' That respect for a legislature's judgment applies even when the laws at issue concern matters of great social significance and moral substance . . . . [a] law regulating abortion, like other health and welfare laws, is entitled to a 'strong presumption of validity.' It must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests."); *Manning v. Hunt*, 119 F.3d 254, 266 (4th Cir. 1997) ("In the case of abortion statutes, the Supreme Court has made it quite clear that the state also has important interests at stake . . . . *Roe* itself recognized the state interests in preserving and protecting the life of the mother and in protecting potential human life.

10

776, 779-80 (4th Cir. 1991). The Legislative Leaders satisfied that minimal burden here.

Dispositive is the fact that the lead defendant, Attorney General Stein, sent a letter to the Legislative Leaders' respective general counsels on June 22, 2023, stating he will not defend the lawsuit and he believes "that some, and possibly all, of Plaintiffs' arguments are legally correct. The Department's filings… on behalf of Attorney General Stein will reflect this legal analysis on the merits." *See* Exh. 1. This letter, coupled with his Twitter post, expressly demonstrate that Attorney General Stein will not represent the Legislative Leaders' and the State of North Carolina's interests at all. *See also Bryant v. Woodall*, No. 1:16CV1368, 2022 WL 3465380, at *2 (M.D.N.C. Aug. 17, 2022) (in a case brought by abortion provider plaintiffs, including the same Plaintiffs in this case, Attorney General Stein, as counsel for several executive agency officials, including Sec. Kinsley who is also a named defendant in this case, joined those plaintiffs in seeking to retain the abolished *Roe/Casey* standards after the Supreme Court overturned those cases.); *see also Bryant v. Stein* No. 1:23CV00077, D.E. #64 (M.D.N.C.,

April 28, 2023) (in a very similar case just two months ago, Attorney General Stein filed a Response in Opposition to the same Legislative Leaders' Motion to Dismiss, adopting the position of the Plaintiff in that case despite his status as a named Defendant.). Recognizing the Legislative Leaders' statutory role in defending every state law, Attorney General Stein noted that he will cooperate should the Legislative Leaders seek to intervene in this case. *See* Exh. 1.

The other named defendants are executive agency officials who have not yet filed an answer or substantive pleading. If they openly oppose these laws like Attorney General Stein, then they cannot possibly represent the Legislative Leaders' interests adequately.

If the other named defendants take a neutral position on defending these laws, that would also fail to adequately represent the Legislative Leaders' position. *Berger* provides a good example of how this could occur. In that litigation against members of the North Carolina Board of Elections, those similarly situated executive agency officials took the position that they basically did not care what the outcome of the lawsuit was, so long as they received guidance from the

court on how to apply the law. *Berger*, 142 S. Ct. at 2199 (noting that "the Board [of elections members] did not oppose the motion on timeliness grounds . . . Nor did the Board produce competing expert reports. Instead, it supplied a single affidavit from its executive director and stressed again the need for clarity about which law to apply . . . ..") If the executive branch official defendants in this case adopt the "we do not care what the law is; just tell us what it is" position like the Board of Elections officials in *Berger*, they would not adequately represent the interests that the Legislative Leaders seek to represent in this case.

Even if the executive branch officials in this case purport to defend the valid laws Plaintiffs questions in the Complaint, they are not the Legislative Leaders. Under this analysis, that fact alone renders them inadequate representatives. Indeed, state law specifically contemplates the distinction between the representatives of executive branch and legislative branch:

> It is the public policy of the State of North Carolina that in any action in any federal court in which the validity or constitutionality of an act of the General Assembly or a provision of the North Carolina Constitution is challenged, the General Assembly, jointly through the Speaker of the House

13

of Representatives and the President Pro Tempore of the Senate, constitutes the legislative branch of the State of North Carolina; the Governor constitutes the executive branch of the State of North Carolina

N.C. Gen. Stat. § 1-72.2(a). This is further laid out in the next section of that statute: "The Speaker . . . and the President Pro Tempore of the Senate, as agents of the State, shall jointly have standing to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute or provision of the North Carolina Constitution." *Id*.

Thus, the Legislative Leaders should be allowed to represent their specific perspective as participants in this lawsuit that could change enacted state laws, without regard to what perspective any executive agency officials may have or strategy they pursue. Especially because those executive agency officials likely have a very different set of motivations in the outcome and defense, or not, of these existing laws.

In short, Attorney General Stein refuses to defend the challenged laws and preemptively announced his intent to join Plaintiffs, as he recently did in a similar case before this

Court, the other executive branch officials named as defendants cannot substitute for the Legislative Leaders' perspective as agents of the State, and the Legislative Leaders will offer a vigorous defense of North Carolina's abortion laws. The Court should, respectfully, grant the Motion to Intervene and allow the Legislative Leaders to intervene and defend North Carolina's duly enacted laws.

The Legislative Leaders also seek an expedited decision on this Motion due to the quickly approaching hearing scheduled for June 28, 2023, just five days from tomorrow when this Motion would likely first be seen by the Court. After learning of the hearing around mid-day today, the Legislative Leaders have undertaken to file this Motion on the same day and seek input from at least Defendant Attorney General Stein and Plaintiffs.

Defendant Attorney General Stein has indicated he does not oppose the Motion. Plaintiffs were not able to provide a position on the Motion before it was filed. Legislative Leaders have not been able to make contact with the counsel for President of the Medical Board and Chair of the Board of Nursing who entered an appearance late this afternoon.

15

Legislative Leaders do not know who represents any of the other named defendants because they have not made an appearance.

Given the recent similar cases before this Court and the Supreme Court where the same Legislative Leaders were allowed to intervene, and the impending hearing deadline in six days, Legislative Leaders respectfully request that the Court allow them to intervene by tomorrow, June 23, 2023, provide a written response for the Court's consideration at the hearing by 5:00 pm on June 26, 2023, and appear at and participate in that hearing on June 28, 2023, in the same posture as the other parties.

## II. In the alternative, the Legislative Leaders should be granted permissive intervention.

While the Legislative Leaders respectfully submit they are entitled to intervene as of right, in the alternative, the Court should grant them permissive intervention. Under Rule 24(b), the Court "may permit anyone to intervene who" files a timely motion and who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2)(B).

16

An applicant for permissive intervention need not show a significant protectable interest or inadequacy of representation. Rather, the applicant need only show that (1) the intervention request is timely filed, (2) the applicant "has a claim or defense that shares with the main action a common question of law or fact," and (3) the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B).

The Legislative Leaders satisfy each of those here. First, for the same reasons detailed above, the Legislative Leaders' Motion is timely. Second, the Legislative Leaders will present a defense "that shares with the main action a common question of law or fact" —namely, whether the challenged laws are a constitutionally permissible means of advancing the state's interests in health, safety, and welfare by regulating abortions in North Carolina. Third, no undue delay or prejudice will result from allowing the Legislative Leaders to intervene at this early stage in litigation. See *Bryant v. Stein* No. 1:23CV00077, D.E. #50 (M.D.N.C., March 10, 2023) (in a very similar case just a few months ago, the Honorable Judge Osteen from the MDNC granted

17

at least permissive intervention for these same Legislative Leaders to defend different North Carolina laws related to abortion regulation.).

In fact, Attorney General Stein stated he does not oppose intervention and no other named defendants have filed an answer or other substantive pleading. Given the pending hearing on a potentially critical temporary restraining order and the lack of any assurance that any named defendant will proactively oppose Plaintiffs' Motion in the absence of the Legislative Leaders, it is imperative that they be allowed to not only intervene, but participate in that hearing. Thus, permissive intervention is proper here, in the alternative.

## CONCLUSION

For these reasons, the Legislative Leaders respectfully request that the Court grant their Motion to Intervene, and allow them to intervene by June 23, 2023, allow them to provide a written response for the Court's consideration at the hearing by 5:00 pm on June 26, 2023, and allow them to participate in the hearing like the other parties.

RESPECTFULLY SUBMITTED THIS 22nd day of June, 2023.

/s/W. Ellis Boyle
W. Ellis Boyle
N.C. State I.D. No. 33826
email:docket@wardandsmith.com*
email:weboyle@wardandsmith.com**
WARD AND SMITH, P.A.
Post Office Box 33009
Raleigh, NC 27636-3009
Tel.: (919) 277-9187
Fax: (910) 794-4877

*Attorney for Intervenor-*
*Defendants Moore and Berger*

*This email address must be used in order to effectuate service under the Federal Rules of Civil Procedures

**Email address to be used for all communications other than service.

19

## CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of June, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ W. Ellis Boyle
W. Ellis Boyle
*Attorney for Proposed Intervenors*

20

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with L.R. 7.3(d) and contains approximately 3,500 [# not to exceed 6,250] words. I also certify that this document uses 13-point Courier New Font and has a top margin of 1.25" on each page in compliance with L.R. 7.1(a).

*/s/ W. Ellis Boyle*
W. Ellis Boyle
