UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD SOUTH ATLANTIC; BEVERLY GRAY, M.D., on behalf of themselves and their patients seeking abortions,<br><br>Plaintiffs,<br><br>v.<br><br>JOSHUA H. STEIN, Attorney General of North Carolina, in his official capacity; TODD M. WILLIAMS, District Attorney ("DA") for Prosecutorial District ("PD") 40, in his official capacity; JIM O'NEILL, DA for PD 31, in his official capacity; SPENCER B. MERRIWEATHER III, DA for PD 26, in his official capacity; AVERY CRUMP, DA for PD 24, in her official capacity; JEFF NIEMAN, DA for PD 18, in his official capacity; SATANA DEBERRY, DA for PD 16, in her official capacity; WILLIAM WEST, DA for PD 14, in his official capacity; LORRIN FREEMAN, DA for PD 10, in her official capacity; BENJAMIN R. DAVID, DA for PD 6, in his official capacity; KODY H. KINSLEY, M.P.P., Secretary of the North Carolina Department of Health and Human Services, in his official capacity; MICHAUX R. KILPATRICK, M.D., PhD., President of the North Carolina Medical Board, in her official capacity, on behalf of herself, the board and its Members; RACQUEL INGRAM, PhD., R.N., Chair of the North Carolina Board of Nursing, in her official capacity, on behalf of herself, the Board and its members; and their employees, agents, and successors,<br><br>Defendants. | **Case No: 1:23-CV-480**<br><br>**MEMORANDUM IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER BY PHILIP E. BERGER, PRESIDENT *PRO TEMPORE* OF THE NORTH CAROLINA SENATE and TIMOTHY K. MOORE, SPEAKER OF THE NORTH CAROLINA HOUSE OF REPRESENTATIVES** |

**INTRODUCTION**

Intervenors, Philip E. Berger, in his official capacity as President *Pro Tempore* of the North Carolina Senate, and Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives (the "Legislative Leaders") offer this explanation as to why Plaintiffs' claims regarding the North Carolina Session Law 2023-14 (The "Act"), the subject of Plaintiffs' Motion, do not require immediate, emergency relief. The Legislative Leaders respectfully request that the Court deny the Motion for Temporary Restraining Order ("TRO"), and permit normal briefing on preliminary injunction issues, if any, that may remain.

The General Assembly is working to pass and enact, with or without the Governor's signature, a technical and conforming bill[1] to make changes to clarify and address most, if not all, aspects of Plaintiffs' claims about the Act.

Over the weekend, the Legislative Leaders offered to join the other represented Defendants in making the following

---

[1] *See* Laws Pertaining to the Department of Health and Human Services and to Make Technical and Conforming Changes to Session Law 2023-14, House Bill 190 ("T&C Bill"), pp 25-28, attached as Ex. 1.

1

stipulation: "the Legislative Leaders stipulate that any recent change in law dealing with a hospitalization for a victim of rape or incest seeking an abortion after 12 weeks (N.C. Gen. Stat. §§ 90-21.81B(3)) will not take effect until October 1, 2023." While, given the short time frame, all parties have not reached agreement on this proposed stipulation, the Legislative Leaders stipulate to this.

With the likely passage of the T&C Bill and the Legislative Leaders' stipulation about the law dealing with hospitalization for rape or incest victims up to 20 weeks not being an issue until October 1, the Legislative Leaders respectfully ask the Court to deny the Motion for TRO, with any issues that may remain to be briefed at a later date.

## STATEMENT OF THE FACTS

The General Assembly passed the Act on May 4, 2023, and it became law when they overrode the Governor's veto on May 17, 2023. On June 16, 2023, Plaintiffs filed a Complaint seeking a declaration that the Act is unconstitutional for various reasons. *See* DE 1, Compl. ¶¶ 78, 80, 82, 83, 85, 87.

On June 21, 2023, Plaintiffs filed a Motion for TRO and Preliminary Injunction. The Court set a hearing date for the

TRO on June 28, 2023. On June 24, 2023, the Court granted the Legislative Leaders' Motion to Intervene for purposes of allowing them to appear and present arguments, including this Brief, at the TRO hearing on June 28.

On June 26, 2023, the North Carolina Senate passed the T&C Bill, by an overwhelming bipartisan vote of 45-2, and sent it to the North Carolina House of Representatives. The Legislative Leaders' current plan is to pass the T&C Bill and submit it to the Governor later today, June 27, 2023. If that happens, the T&C Bill will become law, or the Governor will veto it, within the next 10 days. If the Governor vetoes the T&C Bill, the Legislative Leaders plan to attempt to take up a veto override as soon as practicable, at least by July or early August. Thus, the fate of the T&C Bill, for purposes of consideration for the TRO, should be known by early August.

**STATEMENT OF THE QUESTION PRESENTED**

Should the Court deny Plaintiffs' Motion for TRO because there is no imminent or irreparable harm that Plaintiffs, or any patient or provider in North Carolina, face as a result of the Act until at least October 1, 2023?

3

**ARGUMENT**

The Court should deny Plaintiffs' Motion for TRO because there is no imminent or irreparable harm that Plaintiffs, or any patient or provider in North Carolina, could face from the Act until at least October 1, 2023. To the extent that there were questions about generally applicable constitutional issues or any impending July 1, 2023, deadlines that could cause an immediate harm to Plaintiffs, or any other patient or provider in North Carolina, the Legislative Leaders answered those in this Brief.

To the extent any such constitutional issues remain after the pending passage and enactment of the T&C Bill, the Legislative Leaders respectfully suggest that the Court can schedule further briefing, to conclude in August or September 2023, to address any such remaining issues at that time. This would allow the political process to play out and for appropriate discovery and briefing, but still occur before any October 1, 2023, deadlines arrive. Thus, the Legislative Leaders, respectfully, request that the Court deny Plaintiffs' Motion for TRO.

## I. The Legislative Leaders addressed Plaintiffs' claims that the Act could cause them, or any other patient or provider in North Carolina, harm before October 1, 2023.

### A. The T&C Bill addresses most of Plaintiffs' claims.

As described above, the General Assembly is in the process of passing, and sending for the Governor's signature, the T&C Bill to clarify several points in the Act that Plaintiffs included in their claims. *See* Ex. 1, pp 25-28. The Legislative Leaders fully expect that the T&C Bill will be presented to the Governor today, June 27, 2023. Here is a list of those items from the T&C Bill showing how each addresses Plaintiffs' claims from the Complaint and Motion:

- **Section 14.1.(a):** N.C. Gen. Stat. § 14-23.7 is amended to clarify that a legally performed abortion is an exception to the fetal homicide statute including a cross reference to the new law in the Act, "Article II of Chapter 90 of the General Statutes", instead of the old law that the Act repealed, "N.C. Gen. Stat. § 14-45.1". See DE 1, ¶¶ 3, 43-44; DE 12, p 6.

- **Section 14.1.(b) & (c):** N.C. Gen. Stat. §§ 90-21.81A and 90-21.81B are amended to remove the word "advise" and add that they deal only with an abortion "in the State of North Carolina." See DE 1, ¶¶ 8, 69-70; DE 12, p 8-9.

- **Section 14.1.(d) & (e):** N.C. Gen. Stat. §§ 90-21.82(b)(1a)(a) and 90-21.83A(b)(2)(a) are amended to add that the consent forms for surgical and medical abortions shall include "specific information for the physician's hospital admitting

5

privileges, and whether the physician accepts the pregnant woman's insurance." See DE 1, ¶¶ 6, 62-65; DE 12, p 7-8.

- **Section 14.1.(f):** N.C. Gen. Stat. § 90-21.83B(a)(6) & (7) are amended to remove the provisions requiring verification that the unborn "~~child is no more than 70 days~~" old, and to remove the need to document in the chart the intrauterine "~~location of the pregnancy~~", which are changed to instead require that the doctor verify the probable gestational age of the unborn child and the "existence of an" intrauterine pregnancy. See DE 1, ¶¶ 4, 49; DE 12, p 6-7.

- **Section 14.1.(g):** N.C. Gen. Stat. § 90-21.83C is repealed so there is no longer any issue related to restarting a 72-hour waiting period if under the emergency exception or if certain information like the physician's name changed. See DE 1, ¶¶ 6, 62-65; DE 12, p 7-8.

- **Section 14.1.(j):** N.C. Gen. Stat. § 90-21.93 is amended to change the date for reporting to DHHS information about an abortion performed on a minor from "~~3~~" days to "30" days. See DE 1, ¶¶ 7, 68; DE 12, p 8.

- **Section 14.1.(k):** makes all of the changes in the sections listed above, Sections 14.1(a)-(j), effective as of July 1, 2023.

As Plaintiffs acknowledge in the DE 25 Notice, passage of the T&C Bill moots most, if not all, of Plaintiffs' claims for TRO. If it passes, the Court need not decide these moot issues, certainly not on an emergency basis in a TRO.

6

### B. Stipulation resolves issue about the hospitalization of a rape or incest victim until October 1, 2023.

To the extent that Plaintiffs raised concerns about whether, starting on July 1, 2023, the Act requires that a rape or incest victim must be hospitalized to undergo a surgical abortion between the 12th and 20th week of pregnancy, that concern no longer exists. While the Act already makes that point, to avoid any doubt, the Legislative Leaders stipulate that "any recent change in law dealing with a hospitalization for a victim of rape or incest seeking an abortion after 12 weeks (N.C. Gen. Stat. §§ 90-21.81B(3)) will not take effect until October 1, 2023."

Thus, no immediate concern exists such that the Court needs to address this issue before July 1, 2023. The Court need not decide this issue on an emergency basis in a TRO.

### II. Items not at issue until at least October 1.

In light of the T&C Bill and the stipulation, the following issues or claims in Plaintiffs' Motion for TRO are no longer immediately, if ever, at issue for potentially violating any North Carolina citizen's constitutional rights before October 1, 2023:

1. **"Application of the fetal homicide statute to a lawful abortion is unconstitutionally vague."** *See* DE 12, p 14. This is addressed by Section 14.1.(a) of the T&C Bill, and no argument for unconstitutional vagueness will exist once that becomes law.

2. **"Ten-week verification and pregnancy location requirements are unconstitutionally vague."** *See* DE 12, p 15. This is addressed by Section 14.1.(f) of the T&C Bill, and no argument for unconstitutional vagueness will exist once that becomes law.

3. **"Additional 72-hour mandate is unconstitutionally vague."** *See* DE 12, p 17. This is addressed by Section 14.1.(d), (e), and (g) of the T&C Bill, and no argument for unconstitutional vagueness will exist once that becomes law.

4. **"Reporting requirement and additional 72-hour mandate violate due process because they are impossible to comply with."** *See* DE 12, p 19. This is addressed by Section 14.1. (g) and (j) of the T&C Bill, and no argument for unconstitutional impossibility will exist once that becomes law.

**5. "Advising ban is unconstitutional."** *See* DE 12, p 20. This is addressed by Section 14.1.(b) and (c) of the T&C Bill, no argument for unconstitutional due process or first amendment violations will exist once that becomes law.

**6. "Hospitalization requirement is irrational."** *See* DE 12, p 23. This is addressed by the Legislative Leaders' stipulation, and will not be an issue until at least October 1, 2023. So, it does not present an imminent issue that could give rise to a TRO.

The Legislative Leaders forecast that they will oppose preliminary injunction on this issue, if Plaintiffs seek it. It is not unconstitutional for the State to regulate abortion and, historically, it has done so on this very topic. States have a long-exercised and historic power to regulate health and safety. *Hillsborough Cnty. v. Automated Med. Labs.*, 471 U.S. 707, 719 (1985). Within the past year, the Supreme Court held that a state law "regulating abortion, like other health and welfare laws, is entitled to a 'strong presumption of validity.' It must be sustained if there is a rational basis on which the legislature could have thought that it would

9

serve legitimate state interests." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2284 (2022)(citation omitted).

A party seeking a TRO or preliminary injunction bears a high burden to prove the likelihood of success of the claim.

> Temporary restraining orders are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a temporary restraining order shall not issue in the absence of "specific facts [which] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party may be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The United States Supreme Court has stated that to obtain a temporary restraining order or a preliminary injunction, a movant must establish: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008*); The Real Truth About Obama, Inc. v. Federal Election Comm.*, 575 F.3d 342, 345 (4th Cir.2009), *vacated on other grounds*, 559 U.S. 1089 (2010). Injunctive relief, such as the issuance of a preliminary injunction, is an extraordinary remedy that may be awarded only upon a clear showing that the plaintiff is entitled to such relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (a preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances.").

*Rogers v. Stanback*, No. 1:13CV209, 2013 WL 6729864, at *1 (M.D.N.C. Dec. 19, 2013). Plaintiffs cannot show a likelihood of success on their hospitalization requirement claim.

Plaintiffs posit an unchallenged opinion that "the hospitalization requirement lacks any medical basis or common-sense justification, and it bears no plausible relationship to any legitimate government interest." The Legislative Leaders not only disagree, but under a normal briefing schedule, with discovery on the topic, intend to provide at least the very minimal amount, and actually much more, of a rational basis connection to support the law. The mere fact that certain factions dislike the law supported and passed by the majority of the members of the General Assembly elected by the public does not make the law irrational.

Plaintiffs suggest that there is some equal protection claim implicated by the Act, but this is unfounded. "Neither *Roe* nor *Casey* saw fit to invoke this [equal protection] theory, and it is squarely foreclosed by our precedents, which establish that a State's regulation of abortion is not a sex-based classification and is thus not subject to the "heightened scrutiny" that applies to such classifications…

11

as the Court has stated, the 'goal of preventing abortion' does not constitute 'invidiously discriminatory animus' against women." *Dobbs*, 142 S. Ct. at 2245-46, (internal citations omitted). There is no disparate class of people treated differently under the Act. Plaintiffs cannot sustain this allegation under existing law, or an extension of law.

To the extent Plaintiffs offered any evidence that may be admissible to support their opinion, they have not and cannot cross the high hurdle to overcome the *Dobbs* deference to the North Carolina law as enacted. Furthermore, Plaintiffs certainly have not done so with the even greater showing and confidence needed to support granting a TRO at this stage. Indeed, publicly available information supports North Carolina's current law as 20 states require hospitalization for abortions, and 14 (including North Carolina) do so in the second trimester. *See* https://www.guttmacher.org/state-policy/explore/overview-abortion-laws (last visited June 26, 2023).

Thus, Plaintiffs cannot show a likelihood of success on the merits on this argument, and, respectfully, the Court should deny their Motion for TRO.

12

**7. "Pregnancy location requirement is irrational."** *See* DE 12, p 27. This should be fully addressed by Section 14.1.(f) of the T&C Bill. Section 14.1.(f) changes the existing Act requiring documentation of the actual "intrauterine location of the pregnancy" before a physician can prescribe and administer a chemical abortion to instead just require the "existence of an intrauterine pregnancy." No argument for unconstitutional irrationality should exist once that becomes law.

To the extent that Plaintiffs desire to continue to pursue any preliminary injunctive relief related to this provision after the T&C Bill becomes law, the Legislative Leaders respectfully request that they be allowed to develop a record of facts related to this issue. For the same reasons as with the hospitalization requirement claim, the Legislative Leaders do not concede that the current arguments submitted, to include any opinions offered by Dr. Farris, are accurate or legally controlling. The Legislative Leaders intend to supplement the record to make further arguments on the topic if and when the Court issues a Scheduling Order

regarding any preliminary injunction briefings or proceedings.

Thus, to the extent that any issues remain after the passage of the T&C Bill, the Legislative Leaders respectfully request that the Court deny the pending Motion for TRO and permit the development of facts for a more complete record and additional briefing with a deadline in August or September.

## CONCLUSION

For these reasons, the Legislative Leaders respectfully request that the Court deny Plaintiffs' Motion for TRO. If the Court determines it will consider Plaintiffs' Motion for Preliminary Injunction at a future date, the Legislative Leaders respectfully request that they be allowed to engage in specific discovery on any issues that remain and that the Court set a schedule for the parties to permit discovery and briefing in August or September.

14

RESPECTFULLY SUBMITTED THIS 27th day of June, 2023.

/s/ *W. Ellis Boyle*
W. Ellis Boyle
N.C. State I.D. No. 33826
email:docket@wardandsmith.com*
email:weboyle@wardandsmith.com**
WARD AND SMITH, P.A.
Post Office Box 33009
Raleigh, NC 27636-3009
Tel.: (919) 277-9187
Fax: (910) 794-4877

*Attorney for Intervenors*
*Moore and Berger*

*This email address must be used in order to effectuate service under the Federal Rules of Civil Procedures

**Email address to be used for all communications other than service.

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 27th day of June, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ W. Ellis Boyle*
W. Ellis Boyle
*Attorney for Intervenors*

16

Case 1:23-cv-00480-CCE-LPA   Document 26   Filed 06/27/23   Page 17 of 18

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document complies with L.R. 7.3(d) and contains approximately 2,800 [# not to exceed 8,500] words. I also certify that this document uses 13-point Courier New Font and has a top margin of 1.25" on each page in compliance with L.R. 7.1(a).

*/s/ W. Ellis Boyle*
W. Ellis Boyle

17