IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PLANNED PARENTHOOD SOUTH ATLANTIC and BEVERLY GRAY, MD, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:23-CV-480 |
| JOSHUA STEIN, TODD M. WILLIAMS, JIM O'NEILL, SPENCER MERRIWEATHER, AVERY CRUMP, JEFF NIEMAN, SATANA DEBERRY, WILLIAM WEST, LORRIN FREEMAN, BENJAMIN R. DAVID, KODY H. KINSLEY, MICHAUX R. KILPATRICK, MD, PHD, and RACQUEL INGRAM, PHD, RN, all in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## TEMPORARY RESTRAINING ORDER

The plaintiffs seek a temporary restraining order enjoining the defendants from enforcing the entirety of Part I and one provision in Part II of North Carolina Session Law 2023-14 governing abortions. *See* Doc. 11 (motion); Doc. 1-1 (the Act). The Court has considered the pleadings, the evidence, the briefs, and the arguments of counsel made at a hearing on June 28, 2023.

The plaintiffs challenge the Act as unconstitutional for a number of reasons. The challenges raised in the motion for a temporary restraining order fall into three categories: (1) The hospitalization requirement for surgical abortions after 12 weeks

violates due process and equal protection; (2) The ban on advising, procuring, or causing abortions after 12 weeks is unconstitutionally vague and infringes on First Amendment rights; and (3) Various inconsistencies in the Act make compliance impossible and are unconstitutionally vague.[1] After the complaint was filed, the legislature addressed many of the inconsistencies and impossibilities challenged by the plaintiffs. *See* Doc. 26-1. A bill amending the Act was passed by both the House and the Senate and signed into law by the Governor. Some, but not all, of the plaintiffs' challenges remain unresolved.

For purposes of resolving the motion for a temporary restraining order only, the Court makes the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**.

### The Hospitalization Requirement

The plaintiffs' motion for a temporary restraining order against the enforcement of § 90-21.82A(c), Doc. 1-1 at 21,[2] which requires hospitalization for surgical abortions after twelve weeks, will be denied. The parties agree that this provision does not go into effect until October 1, 2023:

> [A]ny recent change in law dealing with a hospitalization for a victim of rape or incest seeking an abortion after 12 weeks (N.C. Gen. Stat. §§ 90-21.81B(3)), 90-21.82A(c)), will not take effect until October 1, 2023. Therefore, until that date, a qualified physician may perform an abortion after the twelfth week and through the twentieth week of a woman's pregnancy when the procedure is performed in a licensed abortion clinic and when the woman's pregnancy is a result of rape or incest.

---

[1] The plaintiffs made other arguments in the complaint, but those arguments need not be addressed here.

[2] Citations to the Act include both the section provided in the Act and the page number appended by CM-ECF to the copy of the Act attached to the complaint, Doc. 1-1, or to the copy of the amendments attached to the intervenors' response. Doc. 26-1.

Doc. 30 at 2 (joint stipulation). The Court concurs with the construction that this provision does not go into effect until October 1, 2023. Therefore, an immediate temporary restraining order is unnecessary. The plaintiffs' challenges to the hospitalization requirement can be heard after full briefing on the motion for a preliminary injunction.

## "Procure or Cause"

As originally enacted, the Act provided that "[i]t shall be unlawful after the twelfth week of a woman's pregnancy to advise, procure, or cause a miscarriage or abortion." § 90-21.81A(a), Doc. 1-1 at 4. The plaintiffs were likely to succeed on their claim that § 90-21.81A(a), as originally enacted, was unconstitutional. Persons of "ordinary intelligence," *Carolina Youth Action Project ex rel. Ford v. Wilson*, 60 F.4th 770, 781 (4th Cir. 2023), cannot know if the prohibition on "advising" prohibits people from helping others obtain lawful abortions in other states. To the extent that the advising ban did prohibit people from helping others obtain lawful out-of-state abortions, the ban was also highly likely to violate the First Amendment. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163, 168 (2015) (noting content-based laws "are presumptively unconstitutional" and that viewpoint-based laws are "a more blatant and egregious form of content discrimination" (cleaned up)); *Bigelow v. Virginia*, 421 U.S. 809, 827–29 (1975) (reversing conviction because the state could not make it a crime to advertise lawful abortions in another state without infringing on the First Amendment); *Conant v. Walters*, 309 F.3d 629, 632, 637–39 (9th Cir. 2002) (upholding injunction prohibiting the federal

3

government from disciplining a physician for recommending the use of medical marijuana).

The Act as amended rewords this provision as follows: "It shall be unlawful after the twelfth week of a woman's pregnancy to procure or cause a miscarriage or abortion in the State of North Carolina." § 90-21.81A(a), Doc. 26-1 at 26. As the plaintiffs pointed out at the hearing, there is an argument that the amendment remains ambiguous as to whether the "North Carolina" limitation applies to abortions or to the speech or acts "procuring or causing" the abortion. If the statute were construed to prohibit speech or acts in North Carolina that "procure or cause" a lawful abortion in another state, then the plaintiffs would be likely to succeed on the merits of their First Amendment challenge.

But the statute can also be construed to avoid this problem, as all parties who took a position agreed at the hearing. After the hearing, all parties stipulated that "none of the provisions" in the Act, including § 90-21.81A(a):

> impose civil, criminal, or professional liability on an individual who advises, procures, causes, or otherwise assists someone in obtaining a lawful out-of-state abortion. For the avoidance of doubt, this stipulation means that advising, procuring, causing, or otherwise assisting someone in obtaining a lawful out-of-state abortion is not a criminal offense under N.C. Gen. Stat. § 14-23.2.

Doc. 30 at 2 (joint stipulation).

The Court agrees with this construction. So construed, the ambiguities and First Amendment issues raised by the plaintiffs are unlikely to rise to an unconstitutional level and a temporary restraining order is not necessary at this stage.

## Inconsistencies and Ambiguities

The other challenged provisions of the Act as amended will go into effect on July 1, 2023. As the plaintiffs agreed during the recent hearing, many of the inconsistencies and ambiguities identified by the plaintiffs in the original Act have been resolved by the amendments. Specifically, under the Act as amended:

1. It is not fetal homicide to perform a lawful abortion under the Act;

2. Providers are not required to verify that the gestational age is less than 70 days for a medical abortion to be lawful;

3. There is a medical emergency exception to the 72-hour mandate, and the 72 hours do not restart if the name of the physician who will perform the abortion is not known or changes;

4. Providers are not required to inform the patient whether insurance will cover the abortion; and

5. Providers are not required to file complete reports for minors within three days.

The amendments are likely to moot the plaintiffs' vagueness challenges to the provisions in the original Act directed to these matters. Because the plaintiffs are no longer likely to be successful on the claims based on the original language of the Act, the motion for a temporary restraining order as to these provisions will be denied.

The plaintiffs do not agree that the amendment to the intrauterine location and documentation provision in the Act resolved their vagueness concerns. As originally

enacted, the Act provided that a "physician prescribing, administering, or dispensing an abortion-inducing drug" shall "[d]ocument in the woman's medical chart the . . . intrauterine location of the pregnancy." § 90-21.83B(a)(7), Doc. 1-1 at 14. The amendments modify this requirement. The law now provides that a "physician prescribing, administering, or dispensing an abortion-inducing drug" shall "[d]ocument in the woman's medical chart the . . . existence of an intrauterine pregnancy." § 90-21.83B(a)(7), Doc. 26-1 at 27.

Failing to comply with the intrauterine documentation requirement may carry the possibility of criminal penalties. If the failure to so document the existence of an intrauterine pregnancy makes the medical abortion unlawful, as the intervenors appeared to contend at the hearing, then the physician's actions are not excepted from the fetal homicide statute. *See* N.C. Gen. Stat. § 14-23.7(1) (providing an exception to fetal homicide if the acts "were lawful" under the laws regulating abortions). This warrants a strict standard of review for vagueness. *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272–73 (4th Cir. 2019) (en banc) (noting a "stricter standard" applies to laws carrying criminal penalties). Even if criminal penalties do not apply, failing to comply with the intrauterine documentation requirement subjects the physician to professional discipline, thus warranting, at a minimum, a relatively strict standard. *Id.* at 273 (noting a "relatively strict test" applies to quasi-criminal laws that have stigmatizing effects).

The plaintiffs are likely to succeed on their claim that the intrauterine documentation requirement as amended is unconstitutionally vague. The uncontradicted evidence at this stage establishes that patients often seek abortions early in pregnancy

6

when physicians cannot see a gestational sac *in utero*.  Doc. 12-1 at ¶ 41.  If the pregnancy is in early stages and the physician cannot document the existence of an intrauterine pregnancy, then the physician cannot comply with this requirement.  Elsewhere, the Act broadly allows abortions during the first twelve weeks of pregnancy.  *See* § 90-21.81B(2), Doc. 1-1 at 4–5.  At the least, the Act as amended is ambiguous as to whether a provider who cannot comply with the documentation requirement because it is impossible is prohibited from proceeding with the medical abortion early in pregnancy.

On the record at this stage, the plaintiffs are likely to prevail on their claim that the amended provision does not give fair notice as to what conduct is prohibited, and it does not provide sufficient standards to prevent arbitrary and discriminatory enforcement.  *Carolina Youth*, 60 F.4th at 781.  Thus, a temporary restraining order prohibiting the enforcement of the intrauterine documentation requirement is appropriate, subject to additional briefing and development of the record in connection with the motion for a preliminary injunction.

Irreparable injury will result to the plaintiffs if a restraining order is not granted before the Act goes into effect tomorrow; the balance of equities favors protecting the constitutional rights of the plaintiffs; and an injunction is in the public interest by preserving the status quo until such time as the constitutionality of the provision can be examined with the benefit of further briefing from the parties and intervenors.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (listing factors); *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc) (noting that if "there is a likely constitutional violation, the irreparable harm factor is

7

satisfied," the defendant is "in no way harmed," and "the public interest favors protecting constitutional rights").

The Court will waive the bond requirement in its discretion because the defendants face little to no harm by being prohibited from enforcing a statute that is likely to be found unconstitutional. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999) (noting that the amount of the bond "ordinarily depends on the gravity of the potential harm to the enjoined party"); *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013) (recognizing that district courts have discretion to waive the security requirement after "expressly address[ing] the issue of security before allowing any waiver"), *abrogated on other grounds by*, *Winter*, 555 U.S. 7; *Coreas v. Bounds*, 458 F. Supp. 3d 352, 362 (D. Md. 2020).

## Conclusion

Under Federal Rule of Civil Procedure 65, the Court will grant the motion in part and will temporarily enjoin the defendants from enforcing the requirement that physicians must document the existence of an intrauterine pregnancy before proceeding with a medical abortion. The temporary restraining order will expire in 14 days, subject to an expected agreement by the parties to extend this Order to allow fuller briefing on issues raised by the motion for a preliminary injunction.

It is **ORDERED** that:

1. The plaintiffs' motion for a temporary restraining order, Doc. 11, is **GRANTED in part**. Upon receipt of this Order, each and every defendant, their agents, and successors in office are **RESTRAINED**,

8

**ENJOINED**, and **FORBIDDEN** from enforcing the requirement in § 90-21.83B(a)(7), Doc. 26-1 at 27, that a "physician prescribing, administering, or dispensing an abortion-inducing drug" shall "[d]ocument in the woman's medical chart the . . . existence of an intrauterine pregnancy."

2. The plaintiffs' motion for a temporary restraining order, Doc. 11, is **DENIED in part** as to the hospitalization requirement in § 90-21.82A(c). Doc. 1-1 at 21. That provision does not go into effect until October 1, 2023, and a temporary restraining order is unnecessary.

3. The plaintiffs' motion for a temporary restraining order, Doc. 11, is **DENIED in part** as to the ban on procuring or causing a miscarriage or abortion in North Carolina after the twelfth week of pregnancy. § 90-21.81A(a), Doc. 26-1 at 26. The Court construes this provision as amended to not impose civil, criminal, or professional liability on an individual who advises, procures, causes, or otherwise assists someone in obtaining a lawful out-of-state abortion. And so construed the potential First Amendment problem identified as a possibility by the plaintiffs is unlikely to be found.

4. The plaintiffs' motion for a temporary restraining order, Doc. 11, is otherwise **DENIED.**

5. Upon notice, any violation of this Order while the same remains in force and effect is a contempt of Court. Violations are punishable by both the

9

civil and criminal contempt powers of this Court upon a proper showing.

6. In its discretion, the Court **WAIVES** the bond requirement.

7. This Order **REMAINS** in effect until noon on July 14, 2023, subject to further order of the Court.

8. The motion for a preliminary injunction, Doc. 11, remains under advisement. The Court will enter a scheduling order next week for additional briefing.

This the 30th day of June, 2023.

_____
UNITED STATES DISTRICT JUDGE