# EXHIBIT 6

# Nathan Babcock (President Pro Tems Office)

| | |
|---|---|
| **From:** | Rob Lamme <roblamme@rlamme.com> |
| **Sent:** | Wednesday, May 17, 2023 08:06 AM |
| **To:** | Nathan Babcock (President Pro Tems Office) |
| **Subject:** | Re: Medication abortion confusion |

Thanks for the reply. Some thoughts -

I see the blanket statement that medication abortion is legal up until 12 weeks, but my docs and their attorneys don't see how to square that up with the 70 day requirement. As we have discussed, the bill essentially says that medication abortion is allowed up until 12 weeks, but then goes on to say that a doctor can't administer it after 10. If a doctor can't certify that the pregnancy is under 70 days, then they can't provide the medication abortion. If a doctor can't do it, then no one can. That seems unclear at best – and hospital lawyers and their docs are unlikely to do anything that is within shouting distance of being in violation of any section of law (even if there is contradictory language).

If you're thinking that doctors can continue to admin medication abortion whenever it is within their medical judgement and commonly accepted practices to do so, and they are otherwise meeting the other requirements (pre-12 week or one of the exceptions) then I think the 70 day language needs to be changed/deleted.

Re: enforcement mechanisms:

- A civil lawsuit can be brought by "any father of an unborn child that was subject of an abortion may maintain an action for damages against the person who performed the abortion in knowing or reckless violation of this Article." (90-21.88 Civil Remedies) and
- 90-21.88A "Violation of this Article" provides that they "shall be subject to discipline by the NC Medical Board…"
- You could argue that a civil lawsuit wouldn't be successful here or that the NC Med Board wouldn't take action but we don't know that and a doctor shouldn't have to face the possibility of being taken before the board/sued. Nor will they do anything that would even remotely risk that kind of legal exposure/sanction.
- I don't read the bill to say that all of the requirements under 90-21.83B are mere suggestions, but if you do, then we need a clear statement to that effect.

As for when medication abortion is used after 11 weeks, the concern is that given the way that "abortion inducing drug" is defined (basically any medicine used to terminate a pregnancy), the restrictions would apply not only to mifepristone and misoprostol, but also to pitocin and other drugs used in abortions that may occur under the exceptions.

So, say there is a life limiting anomaly at 20 weeks – no chance that the fetus will survive long after birth and the mother, instead of carrying for another 20 weeks only to face the loss of her child, decides to terminate. In that scenario, the doc would offer an "induction abortion" or a c-section. The way that many doctors (and their lawyers) are reading this is that they wouldn't be able to *prescribe any medications* that would induce an abortion after 10 weeks, so the doctors wouldn't be able to offer the mother an induction abortion but would only be left with the option having a c-section.

Does any of that help? I would love for you to talk this through with an OB who can help with the medical options/issues. Let me know if you would like me to arrange that.

--



116 North East Street, Raleigh, NC 27601
919.630.3375 919.883.9955 (fax)
www.roblammepolicy.com

On Tue, May 16, 2023 at 8:15 AM Nathan Babcock (President Pro Tems Office) <Nathan.Babcock@ncleg.gov> wrote:

Why does the FDA only approve mifepristone to 10 weeks? Are you doctors willing to say that they want clarify about prescribing and administering mifepristone off-label? SB20 states that medication abortion shall be lawful through 12 weeks:

> (2) During the first 12 weeks of a woman's pregnancy, when the procedure is performed by a qualified physician licensed to practice medicine in this State in a hospital, ambulatory surgical center, or clinic certified by the Department of Health and Human Services to be a suitable facility for the performance of abortions, in accordance with G.S. 90-21.82A or during the first 12 weeks of a woman's pregnancy when a medical abortion is procured.
> (3) After the twelfth week and through the twentieth week of a woman's pregnancy, when the procedure is performed by a qualified physician in a suitable facility in accordance with G.S. 90-21.82A when the woman's pregnancy is a result of rape or incest.
> (4) During the first 24 weeks of a woman's pregnancy, if a qualified physician determines there exists a life-limiting anomaly in accordance with this Article.

There is also not a specific ban on medication abortion after 12 weeks in cases of rape, incest, fetal anomaly, or medical emergency (although I'd still like to understand why medication abortion is the safest option under some conditions despite the FDA approval only being through 10 weeks and WTO approval only being through 12 weeks).

The language in the bill instructing the physician to verify the gestational age at 70 days does not have an enforcement or punishment mechanism either.

Despite all this, I'm looking at it.

Nathan Babcock

Senior Policy Advisor

Office of Senator Phil Berger

(o) 919.715.8348

(c) 980.406.7707

Nathan.Babcock@ncleg.gov

**From:** RLamme <roblamme@rlamme.com>
**Sent:** Tuesday, May 16, 2023 8:04 AM
**To:** Nathan Babcock (President Pro Tems Office) <Nathan.Babcock@ncleg.gov>
**Subject:** Medication abortion confusion

Good morning. Here's a more detailed outline of the issues some of my folks/their lawyers are having with the questions we discussed last week.

Senate Bill 20 prevents doctors from providing medication abortion after 10 weeks of pregnancy due to the new requirement that the doctor shall confirm the pregnancy is less than 70 days (or 10 weeks) before providing the abortion. Currently, doctors in the state routinely provide medication abortions up to 11 weeks of pregnancy, in line with commonly accepted best practices for the medications. Additionally, Senate Bill 20 prevents doctors from using the medications commonly used for an abortion after 10 weeks, including in cases of medical emergency, rape, incest, or where the fetus has a "life-limiting anomaly" — even when this medication is used as part of the safest care plan for the patient, which may be true at later stages of pregnancy.

- In section 90-21.88A of the bill, the text states that before a physician provides a medication abortion, they must examine the woman in person and they shall meet all of the conditions listed thereafter. Each of the conditions listed — including verification that the pregnancy exists, determination of blood type, and verification that the pregnancy is under 70 days — is a condition that must be met in order to provide the medication abortion. There is no doctor discretion written into the bill. As a result, under the Article, if the doctor cannot verify that the pregnancy is under 70 days because, for example, the ultrasound estimates that it is 73

3

Case 1:23-cv-00480-CCE-LPA   Document 74-6   Filed 09/12/23   Page 4 of 5

days, they cannot provide the medication abortion. If the doctor cannot comply with all provisions of the bill (as stated in 90-21.83B(8), and again in 90-21.88A), they will be violating a provision of the Article and shall be subject to discipline by the North Carolina Medical Board.

- The language in the bill in section 90-21.88A uses the word "shall," which medical and legal experts assert leaves no room for discretion or the use of medical judgment in providing an off-label medication abortion beyond the 70 days. Senate Bill 20 presents the gestational confirmation as a condition that must be satisfied in order to provide the medication abortion in compliance with the Article, and if the condition is not met, the physician shall be subject to discipline. The bill text plainly amounts to a mandate.
- Medical evidence demonstrates that medical providers may safely and effectively provide medication abortion for up to 77 days (11 weeks) in a pregnancy. Many Providers recommend a medication abortion to patients up to 11 weeks of pregnancy.
- Additionally, Senate Bill 20 also impacts hospital-based care for any abortion allowed to occur after 12 weeks of pregnancy. The bill may prevent doctors in a hospital from using medications, including mifepristone and misoprostol, to assist with procedures later in pregnancy, including in cases where the patient or fetus has a serious medical condition. Senate Bill 20 would remove those medication options which are routinely used, potentially forcing doctors into a course of care or unnecessary surgery that is against the patient's wishes or doctor's recommendation.
- Some patients — for example those having an abortion for a wanted pregnancy with life-limiting anomalies — prefer a labor induction abortion with medications instead of surgery because they want to see and hold their baby. Senate Bill 20 removes this option.

Rob Lamme and Associates

Government Relations, Communications and Policy Consulting

(919) 630-3375