# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PLANNED PARENTHOOD SOUTH ATLANTIC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **Case No. 1:23-cv-00480** |
| JOSHUA STEIN, *et al.*, | ) ) | **INTERVENOR- DEFENDANTS'** |
| Defendants, | ) ) ) | **REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |
| and | ) ) | |
| PHILIP E. BERGER and TIMOTHY K. MOORE, | ) ) ) | |
| Intervenor-Defendants. | ) ) ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ..................................................................................... 1

ARGUMENT .......................................................................................... 2

I.   The IUP Determination Requirement is clear and rational. ................ 2

    A.   The IUP Determination Requirement is not vague. ..................... 2

    B.   The IUP Determination Requirement is rationally related to
       the State's interest in protecting women's health. ...................... 6

II.  The Hospitalization Requirement is rational and motivated by
   legitimate health concerns, not animus. ................................. 10

    A.   The Hospitalization Requirement is rationally related to the
       State's interest in protecting women's health. ........................... 10

    B.   Plaintiffs have presented no evidence of animus. ...................... 14

CONCLUSION ....................................................................................... 17

CERTIFICATE OF SERVICE ................................................................... 18

CERTIFICATE OF WORD COUNT .............................................................. 19

Case 1:23-cv-00480-CCE-LPA   Document 105   Filed 06/01/24   Page 2 of 24

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Aetna Better Health of North Carolina, Inc. v. North Carolina Department of Health & Human Services,*
866 S.E.2d 265 (N.C. Ct. App. 2021) ................................................................ 5

*Airline Pilots Association, International v. O'Neill,*
499 U.S. 65 (1991) ................................................................................................ 6

*Armour v. City of Indianapolis,*
566 U.S. 673 (2012) ........................................................................................... 10

*Borden's Farm Products Company v. Baldwin,*
293 U.S. 194 (1934) ............................................................................................. 6

*Catherine H. Barber Memorial Shelter, Inc. v. Town of North Wilkesboro Board of Adjustment of Town of North Wilkensboro,*
576 F. Supp. 3d 318 (W.D.N.C. 2021) ............................................................ 14

*City of Cleburne v. Cleburne Living Center,*
473 U.S. 432 (1985) ........................................................................................... 14

*City of Greensboro v. Guilford County Board of Elections,*
248 F. Supp. 3d 692 (M.D.N.C. 2017) ............................................................ 14

*Craigmiles v. Giles,*
312 F.3d 220 (6th Cir. 2002) .............................................................................. 7

*Dobbs v. Jackson Women's Health Organization,*
597 U.S. 215 (2022) ...................................................................................passim

*Doe v. Settle,*
24 F.4th 932 (4th Cir. 2022) ..................................................................... 10, 11

*F.C.C. v. Beach Communications, Inc.,*
508 U.S. 307 (1993) ............................................................................................. 8

*Gonzales v. Carhart,*
550 U.S. 124 (2007) ............................................................................... 1, 2, 3, 13

*Greenville Women's Clinic v. Bryant,*
222 F.3d 157 (4th Cir. 2000) ........................................................................... 13

*June Medical Services v. Gee,*
905 F.3d 787 (5th Cir. 2018) ........................................................................... 15

ii

*Kadel v. Folwell*,
    100 F.4th 122 (4th Cir. 2024) ........................................................ 14

*League of Women Voters of Florida, Inc. v. Florida Secretary of State*,
    66 F.4th 905 (11th Cir. 2023 ........................................................ 15

*Matthews v. Lucas*,
    427 U.S. 495 (1976) ...................................................................... 6

*McDonald v. Board of Election Commissioners of Chicago*,
    394 U.S. 802 (1969) ...................................................................... 13

*Merrifield v. Lockyer*,
    547 F.3d 978 (9th Cir. 2008) .......................................................... 7

*Perry v. GRP Financial Services Corp.*,
    1674 S.E.2d 780 (N.C. Ct. App. 2009) ............................................ 5

*Phan v. Virginia*,
    806 F.2d 516 (4th Cir. 1986) ..................................................... 6, 7

*Planned Parenthood of Indiana & Kentucky, Inc. v. Marion County Prosecutor*,
    7 F.4th 594 (7th Cir. 2021) ............................................................ 5

*Romer v. Evans*,
    517 U.S. 620 (1996) .................................................................. 6, 14

*Skilling v. United States*,
    561 U.S. 358 (2010) ...................................................................... 4

*St. Joseph Abbey v. Castille*,
    712 F.3d 215 (5th Cir. 2013) .......................................................... 7

*Stuart v. Huff*,
    834 F. Supp. 2d 424 (M.D.N.C. 2011) ............................................ 3

*Trump v. Hawaii*,
    585 U.S. 667 (2018) .................................................................. 6, 14

*United States Department of Agriculture v. Moreno*,
    413 U.S. 528 (1973) ...................................................................... 14

*United States v. Salerno*,
    481 U.S. 739 (1987) ...................................................................... 11

*United States v. Windsor*,
    570 U.S. 744 (2013) ...................................................................... 16

iii

*Vance v. Bradley,*
  440 U.S. 93 (1979) ........................................................................ 11

*Washington v. Davis,*
  426 U.S. 229 (1976) ...................................................................... 11

*Wilkins v. Gaddy,*
  734 F.3d 344 (4th Cir. 2013) ........................................................ 13

*Williamson v. Lee Optical,*
  348 U.S. 483 (1955) ...................................................................... 11

**STATUTES**

N.C. Gen. Stat. § 90-21.81B ............................................................ 3, 5

**OTHER AUTHORITIES**

Joel S. Johnson, *Vagueness Avoidance*, 110 Va. L. Rev. 71 (2024) .................. 4

Kenji Yoshino, *The New Equal Protection*, 124 Harv. L. Rev. 747, 760
  (2011) ............................................................................................ 6

Kurt Barnhart *et al.*, *Pregnancy of Unknown Location: A Consensus
  Statement of Nomenclature, Definitions & Outcome*, 95 Fertility &
  Sterility 857 (2011) ....................................................................... 3

Mary Blanchette Porter & Steven Robert Goldstein, *Pelvic Imaging in
  Reproductive Endocrinology, in Yen & Jaffe's Reproductive
  Endocrinology: Physiology, Pathophysiology, & Clinical Management*
  772 (9th ed. 2024) ........................................................................ 3

Oral Argument, *FDA v. Alliance for Hippocratic Medicine*, No. 23-235
  (U.S. Mar. 26, 2024), *available at* https://www.c-span.org/video/?534291-
  1/fda-v-alliance-hippocratic-medicine-oral-argument ................................ 16

*Questions and Answers on Mifepristone for Medical Termination of
  Pregnancy Through Ten Weeks Gestation*, U.S. Food & Drug Admin.,
  https://bit.ly/3X2Sx7w .................................................................. 8

iv

## INTRODUCTION

"The Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 302 (2022). And many states now do so. North Carolina has chosen to permit elective abortions until twelve weeks subject to certain regulations for "the protection of maternal health and safety." *Id.* at 301. North Carolina law also permits abortion after twelve weeks in cases of medical emergency, rape and incest, and fetal anomalies, subject to health and safety protections. Those regulations are "entitled to a strong presumption of validity." *Id.* This Court should decline Plaintiffs' invitation to "substitute [its] social and economic beliefs for the judgment of legislative bodies." *Id.* at 300.

Plaintiffs' claim that the IUP Determination Requirement is unconstitutionally vague is wrong for three reasons. First, the Attorney General agrees that "probable" modifies "intrauterine pregnancy." Second, Plaintiffs' experts confirm that "probable intrauterine pregnancy" describes one of the five categories of early pregnancy. Third, reviewing courts must resort to "every reasonable construction … in order to save [that law] from unconstitutionality." *Gonzales v. Carhart*, 550 U.S. 124, 153 (2007). And this Court has already concluded that the best reading of the IUP Determination Requirement is to require the determination of a *probable* intrauterine pregnancy. PI Order 19, ECF No. 80. Plaintiffs cannot hope to show that the IUP Determination Requirement is vague when they have failed to respond

1

to the reasonable statutory argument propounded by this Court, the Attorney General, and its own experts.

**ARGUMENT**

I. **The IUP Determination Requirement is clear and rational.**

    A. **The IUP Determination Requirement is not vague.**

All parties agree that vagueness is a legal issue appropriate for summary judgment. AG's Resp. 19, ECF No. 99; Pls.' Reply 24, ECF No. 100. The IUP Determination Requirement is not vague because it "provides doctors of ordinary intelligence a reasonable opportunity to know what is [required]." *Gonzales*, 550 U.S. at 149 (cleaned up).

According to Plaintiffs' experts, the term refers to one of five early pregnancy diagnoses: "[A] patient has a 'probable intrauterine pregnancy' if there is a likely gestational sac … visible [by ultrasound] in the uterus." Boraas Report ¶ 43, ECF No. 94-2; Boraas Dep. 126:11–13, ECF No. 97-1 ("There are, you know, kind of five main categories of early pregnancy."). As Dr. Boraas explained, there are "five main diagnoses" for early pregnancy. Boraas Dep. 127:9–16. "The first is a definite intrauterine pregnancy. The second is a *probable intrauterine pregnancy*. The third is a pregnancy of unknown location. The fourth is a probable ectopic pregnancy. And the … fifth is a definite ectopic pregnancy." *Id*. (emphasis added). Dr. Farris agreed that a "probable intrauterine pregnancy" is among one of five "most common options in a pregnant patient when I am looking at their ultrasound." Farris Dep. 102:22–103:6, ECF No. 74-2. This testimony establishes not only that S.B. 20 provides Plaintiffs "a reasonable opportunity to know what is

2

[required]," *Gonzales*, 550 U.S. at 149 (cleaned up), but that Plaintiffs know *precisely* what S.B. 20 requires.[1]

Plaintiffs disagree for three reasons. None have merit. First, Plaintiffs say that the IUP Determination Requirement is vague because it is unclear whether criminal penalties apply. Pls.' Reply 25–27; *see also* AG's Resp. 22. But S.B. 20's "notwithstanding" clause precludes that reading. It provides that drug-induced abortions are lawful during the first twelve weeks of a woman's pregnancy "[n]otwithstanding" North Carolina's criminal penalties. N.C. Gen. Stat. § 90-21.81B; *see also Stuart v. Huff*, 834 F. Supp. 2d 424, 434 (M.D.N.C. 2011) (holding abortion providers were unlikely to succeed on a vagueness challenge to North Carolina's "Woman's Right to Know" Act because it had a "notwithstanding" clause). Plaintiffs do not even respond to this statutory construction argument. Regardless, even if criminal or quasi-criminal penalties apply, the statute passes constitutional muster because it "sets forth [the regulated parties'] obligations clearly." *Stuart*, 834 F. Supp. 2d at 434; *see also Gonzales*, 550 U.S. at 149 (finding criminal statute not vague because it gives doctors "of ordinary intelligence a reasonable opportunity to know what is prohibited").

_____

[1] Plaintiffs' experts' definition of "probable intrauterine pregnancy" follows the medical literature. *See, e.g.*, Mary Blanchette Porter & Steven Robert Goldstein, *Pelvic Imaging in Reproductive Endocrinology*, *in Yen & Jaffe's Reproductive Endocrinology: Physiology, Pathophysiology, & Clinical Management* 772, 805 (9th ed. 2024); Kurt Barnhart *et al.*, *Pregnancy of Unknown Location: A Consensus Statement of Nomenclature, Definitions & Outcome*, 95 Fertility & Sterility 857, 859 (2011).

3

Second, Plaintiffs argue that the IUP Determination Requirement is "unclear as to whether the provider must determine that the existence of an intrauterine pregnancy is 'probable' or whether some other standard of certainty is required." Pls.' Reply 27. As the Attorney General concedes, the series-qualifier canon demonstrates that "probable" is the correct standard. AG's Resp. 20. This Court has already recognized as much. PI Order 19 (explaining that this "interpretation seems more likely").

Yet again, Plaintiffs have no answer to this statutory construction argument. This failure is determinative as the Supreme Court has "instructed the federal courts to … adopt[] a limiting interpretation if such a construction is fairly possible" "before striking a … statute as impermissibly vague." *Skilling v. United States*, 561 U.S. 358, 405–06 (2010) (cleaned up); *see also* Joel S. Johnson, *Vagueness Avoidance*, 110 Va. L. Rev. 71, 72–73 & n.4 (2024) (collecting cases "avoid[ing] the vagueness conclusion by narrowly construing the indefinite statutory language").

Third, Plaintiffs argue that "the meaning of 'probable' [is] undefined and fatally vague." Pls.' Reply 28; *see also* AG's Resp. 21–22. Not so. As Plaintiffs' experts testified the term refers to one of five specific categories of early pregnancy: "[A] patient has a 'probable intrauterine pregnancy' if there is a likely gestational sac … visible [by ultrasound] in the uterus." Boraas Report ¶ 43. This medical definition, moreover, tracks with the ordinary meaning of probable. *See* PI Order 19 n.11 (quoting Merriam-Webster and defining "probable" as "supported by evidence strong enough to establish presumption but not proof").

4

Backtracking, Plaintiffs complain "it is not clear" whether the IUP Determination Requirement "would be satisfied by a treating physician's *subjective belief* that a patient has a 'probable intrauterine pregnancy.'" Pls.' Reply 29. But as Plaintiffs' experts admit, the term refers to one of the "most common" early pregnancy diagnoses. Farris Dep. 102:22–103:6. Requiring a physician to exercise reasonable medical judgment in determining whether a patient has a probable intrauterine pregnancy does not render the statute vague. *See Planned Parenthood of Ind. & Ky., Inc. v. Marion Cnty. Prosecutor*, 7 F.4th 594, 601 (7th Cir. 2021).

Finally, Plaintiffs argue that the IUP Determination Requirement is vague because it allegedly conflicts with section 90-21.81B(2)'s "authorization of medication abortion through the first twelve weeks of pregnancy." Pls.' Reply 29–30; *see also* AG's Resp. 21. But "[i]nterpretations that would create a conflict between two or more statutes are to be avoided, and statutes should be reconciled with each other whenever possible." *Aetna Better Health of N.C., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 866 S.E.2d 265, 269 (N.C. Ct. App. 2021). Here, the provisions are easily reconcilable: abortion is legal before twelve weeks "subject to" the IUP Determination Requirement. N.C. Gen. Stat. § 90-21.81B; *see also Perry v. GRP Fin.*, 1674 S.E.2d 780, 785 (N.C. Ct. App. 2009) (explaining that "[w]hen conflicting statutes are construed, the specific controls over the general if the statutes cannot be reconciled"). And that makes sense: abortion drugs are contraindicated for ectopic pregnancies and do not treat them.

5

**B. The IUP Determination Requirement is rationally related to the State's interest in protecting women's health.**

The IUP Determination Requirement is rationally related to the State's legitimate interest in "the protection of maternal health and safety." *Dobbs*, 597 U.S. at 301. Rather than contesting the legitimacy of this interest, Plaintiffs seek to transform rational basis review into heightened scrutiny. No one disputes that legislatures are subject to "*some* judicial review," *Airline Pilots Ass'n, Int'l. v. O'Neill*, 499 U.S. 65, 75 (1991), but it's exceedingly rare that a legislative policy choice is found to be "illegitimate under rational basis scrutiny," *Trump v. Hawaii*, 585 U.S. 667, 705 (2018). Plaintiffs thus bear the burden of "demonstrat[ing] the insubstantiality of [the IUP Determination Requirement's] relation" to a legitimate government interest. *Matthews v. Lucas*, 427 U.S. 495, 510 (1976). They have not met that high burden here.

The pre-*Dobbs* cases cited by Plaintiffs do not suggest otherwise. In *Trump v. Hawaii*, the Court *upheld* the challenged classification. 585 U.S. at 706. In *Borden's Farm Products Co. v. Baldwin*, the Court held that "common knowledge" could *sustain* a law under rational basis review, not enjoin it. 293 U.S. 194, 204 (1934). And in *Romer v. Evans*, a case described as a "ticket good for only one day," Kenji Yoshino, *The New Equal Protection*, 124 Harv. L. Rev. 747, 760 (2011), the Court recognized that "a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." 517 U.S. 620, 632 (1996).

*Phan v. Virginia* supports Intervenors. There, even though Virginia "failed to articulate a valid rationale" for the challenged law, the Fourth

6

Circuit remanded because it could "*hypothesize … a rational justification for* [the] differential treatment." 806 F.2d 516, 521–22 (4th Cir. 1986) (emphasis added). And Plaintiffs' out-of-circuit cases strike down laws motivated solely by economic protectionism, a concern not present here. *See St. Joseph Abbey v. Castille*, 712 F.3d 215, 222 (5th Cir. 2013) ("[N]either precedent nor broader principles suggest that mere economic protection of a particular industry is a legitimate governmental purpose."); *Merrifield v. Lockyer*, 547 F.3d 978, 991 n.15 (9th Cir. 2008) ("We conclude that mere economic protectionism for the sake of economic protectionism is irrational with respect to determining if a classification survives rational basis review."); *Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) ("Courts have repeatedly recognized that protecting a discrete interest group from economic competition is not a legitimate governmental purpose.").

The General Assembly rationally concluded that requiring an abortion provider to document a probable intrauterine pregnancy before prescribing abortion drugs supports maternal health and safety. It is undisputed that: (1) mifepristone "does not terminate ectopic pregnancies," Pls.' Reply 34; (2) mifepristone is "contraindicated in patients with *confirmed or suspected* ectopic pregnancies," *id.* (cleaned up); (3) a patient with a pregnancy of unknown location *could* have "an ectopic pregnancy that is not yet visible," Farris Dep. 111:4–11, (4) ruptured ectopic pregnancies are the leading cause of first-trimester maternal mortality, *id.* at 112:2–3, 113:14–25, 123:9–11; (5) "some of the expected symptoms experienced with a medical abortion (abdominal pain, uterine bleeding) may be similar to those of a ruptured

7

ectopic pregnancy," FDA Label 6, ECF No. 65-2; and (6) 2% of pregnancies are ectopic, Farris Dep. 113:8–13, 113:24–25. These facts explain why it is risky to prescribe abortion drugs to a woman with a pregnancy of unknown location.

Plaintiffs' potpourri of arguments against North Carolina's common-sense law fails. First, Plaintiffs parse words claiming that a possible ectopic pregnancy is not a suspected ectopic pregnancy. Pls.' Reply 34. But nothing prohibits a state from protecting women from both possible and suspected ectopic pregnancies. On the contrary, the FDA label warns that "[h]ealthcare providers should remain alert to the possibility that a patient who is undergoing a medical abortion could have an undiagnosed ectopic pregnancy." FDA Label 6.

Plaintiffs next say the possibility of a woman mistaking a ruptured ectopic pregnancy for abortion drug symptoms is "highly speculative." Pls.' Reply 34. But unless treated early, "almost 40 percent of ectopic pregnancies rupture suddenly." *Questions and Answers on Mifepristone for Medical Termination of Pregnancy Through Ten Weeks Gestation*, U.S. Food & Drug Admin., https://bit.ly/3X2Sx7w. And it's undisputed that the symptoms are "similar" to abortion-drug symptoms. FDA Label 6; Farris Dep. 124:13–16. The General Assembly might reasonably err on the side of safety by assuming that a patient with no medical training could confuse the two similar sets of symptoms. *F.C.C. v. Beach Comm'ns, Inc.*, 508 U.S. 307, 315 (1993) ("[A] legislative choice … may be based on rational speculation unsupported by evidence or empirical data.").

8

Plaintiffs also argue that the IUP Determination Requirement might delay care for some patients. Pls.' Reply 31. But that is *only* true for patients who do not have a probable or definite intrauterine pregnancy—in other words, patients for whom mifepristone is particularly high risk. Further, an ultrasound can detect the gestational sac as early as five weeks LMP. Boraas Dep. 145:10–13. This means that in all but the earliest abortions, determining a probable intrauterine pregnancy should pose no issue. It is not irrational to delay prescribing a potentially dangerous drug for a few days to ensure that a woman does not have a life-threatening condition.

Plus, the IUP Determination Requirement does not delay surgical abortions. Surgical abortions have a lower complication rate than drug-induced abortions at the same gestational age. Wubbenhorst Report ¶¶ 37–38, ECF No. 97-2. That is particularly true if the patient has a pregnancy of unknown location because a surgical abortion allows the physician to rule out an ectopic pregnancy. *Id.* ¶ 251; Farris Report ¶ 66, ECF No. 94-1.

Finally, Plaintiffs suggest that the IUP Determination Requirement "does nothing to ensure prompt screening or treatment for ectopic pregnancy." Pls.' Reply 31. Yet Plaintiffs admit that abortion providers would need to tell a woman who may have an ectopic pregnancy to seek follow-up ultrasounds when they cannot safely prescribe mifepristone because she has a pregnancy of unknown location. *Id.* at 33. The General Assembly could have rationally concluded that a woman who does not receive abortion-inducing drugs because of a possible ectopic pregnancy is more likely to seek follow-up care.

9

## II. The Hospitalization Requirement is rational and motivated by legitimate health concerns, not animus.

Plaintiffs cannot prevail on their equal protection claim unless they establish that the Hospitalization Requirement treats abortion patients "differently from others who are similarly situated" *and* that it has no rational basis for doing so. *Doe v. Settle*, 24 F.4th 932, 943 (4th Cir. 2022). Intervenors, on the other hand, are entitled to summary judgment so long as it "has a rational basis." *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012). Because the Hospitalization Requirement is rational, Intervenors are entitled to summary judgment on Plaintiffs' equal protection and due process claims.[2]

### A. The Hospitalization Requirement is rationally related to the State's interest in protecting women's health.

Plaintiffs failed to "negate every conceivable basis which might support" the Hospitalization Requirement. *Settle*, 24 F.4th at 944. More specifically, the Hospitalization Requirement is rationally related to the State's legitimate interest in "the protection of maternal health and safety," *Dobbs*, 597 U.S. at 301, because hospitals are better equipped to treat second-trimester abortion complications. Bane Report ¶¶ 50–52, 58, ECF No. 97-4.

Plaintiffs do not meaningfully contest that the requirement increases the safety of second-trimester abortion for at least some patients. *See* Pls.' Reply 13 (conceding that Planned Parenthood refers "patients with preexisting medical conditions" to hospitals and has a "hospital transfer

---

[2] Intervenors are entitled to summary judgment on Plaintiffs' vagueness claim against the Hospitalization Requirement because Plaintiffs abandoned it. Pls.' Reply 24 n.10.

protocol" in the event of complications that cannot be treated in outpatient facilities). Plaintiffs concede "the rationality of the Hospitalization Requirement for patients experiencing medical emergencies." *Id.* at. 16. That concession dooms their facial challenge. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiffs also concede that "miscarriage management more typically happens in hospitals or ambulatory surgical centers." Pls.' Reply 13. This concession, too, establishes at least "an imperfect fit between a plausible reason and some legitimate end." *Settle*, 24 F.4th at 944. Moreover, the Hospitalization Requirement applies to a particular type of medical procedure, not a particular class of patients, making the Equal Protection Clause inapplicable. *See Washington v. Davis*, 426 U.S. 229, 239 (1976) (holding that a "disproportionate impact" cannot invalidate a law).

Plaintiffs' suggestion that the Hospitalization Requirement is "overinclusive" and "underinclusive," Pls.' Reply 21–23, is irrelevant. Under rational basis review, states can move one step at a time: "there is no tailoring requirement." *Settle*, 24 F.4th at 943–44; *see also Vance v. Bradley*, 440 U.S. 93, 108 (1979) ("Even if the classification … is to some extent both underinclusive and overinclusive … perfection is by no means required.").

Plaintiffs also argue the General Assembly cannot distinguish between medical procedures like abortion and miscarriage management. Pls.' Reply 11; *see also* AG's Resp. 17. But the rational basis test allows the General Assembly to "select one phase of one field and apply a remedy there, neglecting the others." *Williamson v. Lee Optical*, 348 U.S. 483, 489 (1955). And no case requires evidence that "the North Carolina legislature will

11

eventually pass a version of S.B. 20 regulating colonoscopies." Pls.' Reply 23. S.B. 20 does *not* "expressly carve[] out miscarriage management from the … Hospitalization Requirement." *Cf. id.* at 13–14 (emphasis omitted). It defines abortion. Indeed, S.B. 20 was a change to abortion laws, not an overhaul of state medical regulations.

Both Plaintiffs and the Attorney General criticize Intervenors for failing to introduce sufficient evidence "regarding the comparable safety of abortion and miscarriage management." Pls.' Reply 6; AG's Resp. 3, 14, 17. But as Plaintiffs admit, "the State is not required to make *any* affirmative evidentiary showing." Pls.' Resp. 3 (emphasis added). Regardless, Intervenors *did* introduce evidence that physiological differences between miscarriage and abortion exist—like the softening of fetal cortical bones and the softening and opening of the cervix in some miscarriage patients—and may make some aspiration or D&E procedures *riskier* for abortion than for miscarriage management. Bane Addendum, ECF No. 97-7; Bane Dep. 73:18–21, 74:10–24, 75:4–9, ECF No. 94-4. "[A]t higher gestational ages, rates of death from abortion are much higher than those from miscarriage." Wubbenhorst Report ¶ 92.[3] The General Assembly could have rationally thought these differences important to maternal health. Plaintiffs maintain that "[t]he rational basis standard does not require this Court to defer to the Intervenors' evidence,"

---

[3] Plaintiffs disregard this testimony based on a typo in Dr. Wubbenhorst's expert report. Pls.' Reply 6–7; ECF No. 94-5, Wubbenhorst Dep. 90:17–91:11. The attached correction explains that the typo did not alter her conclusion that "at higher gestational ages, rates of death from abortion are much higher than those from miscarriage." Wubbenhorst Correction ¶ 5, attached as Ex. 9.

12

Pls.' Reply 4, but it *does* require legislative deference. *See Wilkins v. Gaddy*, 734 F.3d 344, 347–48 (4th Cir. 2013) ( requiring courts to "accord the legislation a strong presumption of validity" even absent "evidence or empirical data").

Plaintiffs claim that ordinary legislative deference evaporates because no "medical and scientific uncertainty exists." Pls.' Reply 4. But federal courts accord states "wide leeway" to enact legislation. *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 808–09 (1969). Plus, "U.S. abortion data are incomplete" because federal reporting requirements for most abortion complications do not exist. Wubbenhorst Report ¶¶ 14, 16, 20. The CDC acknowledges this limitation. *Id.* ¶¶ 18–19.

Moreover, the Fourth Circuit has already held that states may rationally "distinguish[] between abortion services and other medical services when regulating physicians or women's healthcare." *Greenville Women's Clinic v. Bryant*, 222 F.3d 157, 173 (4th Cir. 2000). Plaintiffs distinguish *Greenville Women's Clinic* because "the challenged regulation … largely track[ed] the standards and guidelines issued by the ACOG, Planned Parenthood, and the National Abortion Federation." Pls.' Reply 14. But there is no requirement for state abortion regulations to reflect guidelines from any private organization—much less those that profit from abortion. *See Gonzales,* 550 U.S. at 170–71 (Ginsburg, J., dissenting) (criticizing majority for upholding a federal ban on a procedure endorsed by ACOG).

Finally, Plaintiffs' attempt to smuggle concerns about abortion access into rational basis review falls flat. *See* Pls.' Reply 16; AG's Resp. 17–18.

13

North Carolina law does not ban abortion and subjects legal abortion only to commonsense health and safety regulations. Under the rational basis test, states may prioritize women's health over unfettered abortion access. *Dobbs*, 597 U.S. at 281. And *Kadel v. Folwell*, which the court found to implicate a protected class, is inapplicable. 100 F.4th 122, 143 (4th Cir. 2024). Because the Hospitalization Requirement increases safety for at least some patients, it is rationally related to the State's interest in protecting women's health.

### B. Plaintiffs have presented no evidence of animus.

Rational basis review is satisfied where, as here, legitimate government interests exist. On the rare occasions when the Supreme Court has "str[uck] down a policy as illegitimate under rational basis scrutiny[,] … a common thread has been that the laws at issue lack any purpose other than a bare desire to harm a politically unpopular group." *Trump*, 585 U.S. at 705 (cleaned up). This animus must be the *sole* motivation for the policy's enactment. *See Romer*, 517 U.S. at 632 (legislation "inexplicable by anything but animus"); *City of Greensboro v. Guilford Cnty. Bd. of Elections*, 248 F. Supp. 3d 692, 694–95, 703 (M.D.N.C. 2017) (striking down law because no one had been able "to identify any obvious legitimate governmental interest").

To determine whether animus exists, courts look to the legislative history of the enactment. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448, 450 (1985); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973); *Catherine H. Barber Mem'l Shelter, Inc. v. Town of N. Wilkesboro Bd. of Adjustment of Town of N. Wilkensboro*, 576 F. Supp. 3d 318, 340 (W.D.N.C. 2021). Here, "animus against abortion providers and abortion patients" is far

14

from "the only explanation" for the Hospitalization Requirement. Pls.' Reply 17. To the contrary, the protection of maternal health easily justifies both challenged requirements.

Moreover, Plaintiffs do not identify a single statement from the legislative record as evidence of animus. Instead, Plaintiffs' so-called evidence consists of (1) "lobbying materials," *id.* at 19; (2) "threats, professional retaliation, harassment, and physical violence" by third-party protestors or employers, *id.* at 18, and (3) the [post-enactment] testimony of Intervenors' three witnesses," in this case, *id.* at 19–20.

Plaintiffs' "lobbying materials" consist of a single document created by *private* pro-life organizations that mentions neither the Hospitalization Requirement nor second-trimester surgical abortion. Chemical Abortion: Protocols for a Risky Business 3, ECF No. 74-11. Instead, those independent, third-party advocates proposed a model bill—which the General Assembly did not enact—that would have regulated first-trimester abortion drugs. *Id.* at 4–17. Regardless, "the concerns expressed by political opponents" to abortion "during the legislative process are not reliable evidence of legislative intent." *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 940 (11th Cir. 2023). So too for Plaintiffs' second category of "evidence"— the "[a]ctions taken by individuals to protest abortion or to intimidate those who perform it [are not] attributable to the state." *June Med. Servs. v. Gee*, 905 F.3d 787, 810 n.60 (5th Cir. 2018), *rev'd*, 591 U.S. 299 (2020) (plurality opinion), *abrogated by Dobbs*, 597 U.S. 215 (2022).

15

Nor is the use of terms like "abortionist" and "chemical abortion" by Intervenors' expert witnesses evidence of animus, much less *legislative* animus. Anything they said came months after enactment of the law. Regardless, the Supreme Court used the term "abortionist" three times in *Dobbs*. 597 U.S. at 244, 245, 251. And Justice Jackson recently used the phrase "chemical abortion" at oral argument. Oral Argument at 1:19:44, *FDA v. Alliance for Hippocratic Medicine*, No. 23-235 (U.S. Mar. 26, 2024), *available at* https://www.c-span.org/video/?534291-1/fda-v-alliance-hippocratic-medicine-oral-argument.

Finally, Plaintiffs argue that "the Hospitalization Requirement is an 'unusual deviation from the [legislature's] usual tradition' of declining to prescribe clinical settings by statute" under *United States v. Windsor*. Pls.' Reply 23. But the "unusual deviation" in *Windsor* referred to the federal government's intrusion into an area traditionally left to states. 570 U.S. 744, 770 (2013). In contrast, *Dobbs* explicitly "return[ed] the issue of abortion to the people's elected representatives." 597 U.S. at 232.

16

## CONCLUSION

For these reasons, this Court should grant summary judgment on all claims to Intervenors.

RESPECTFULLY SUBMITTED THIS 1st day of June, 2024.

_s/ W. Ellis Boyle_
W. Ellis Boyle
N.C. State Bar I.D. No. 33826
email: docket@wardandsmith.com*
email: weboyle@wardandsmith.com
**
WARD AND SMITH, P.A.
Post Office Box 7068
Wilmington, NC 28406-7068
Tel.: (910) 794-4800
Fax: (910) 794-4877

* This email address must be used in order to effectuate service under the Federal Rules of Civil Procedure

** Email address to be used for all communications other than service

_s/ Erin M. Hawley_
Erin M. Hawley***
DC Bar No. 500782
ehawley@adflegal.org
Erik C. Baptist***
DC Bar No. 490159
ebaptist@adflegal.org
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
Tel.: (202) 393-8690
Fax: (202) 347-3622

Julia C. Payne***
AZ Bar No. 038773
jpayne@adflegal.org
Kevin H. Theriot***
AZ Bar No. 030446
ktheriot@adflegal.org
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Tel.: (480) 388-8028
Fax: (480) 444-0028

*** _Notice of Special Appearance Filed_

_Attorneys for Intervenor-Defendants_

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*s/ Erin M. Hawley*
Erin M. Hawley

**CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing brief contains 4,055 words in accordance with LR 56.1(c) and this Court's Order Granting Intervenor-Defendants' Unopposed Motion to Exceed Word Limit, ECF No. 103.

<u>*s/ Erin M. Hawley*</u>
Erin M. Hawley